**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TERRY JOHNSON | : | |
| | : | |
| Appellant | : | No. 2793 EDA 2018 |

Appeal from the Judgment of Sentence Entered September 5, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001794-2014,
CP-51-CR-0001795-2014, CP-51-CR-0001796-2014,
CP-51-CR-0001797-2014, CP-51-CR-0001799-2014,
CP-51-CR-0001800-2014, CP-51-CR-0001801-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TERRY JOHNSON | : | |
| | : | |
| Appellant | : | No. 849 EDA 2019 |

Appeal from the Judgment of Sentence Entered September 5, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001794-2014,
CP-51-CR-0001795-2014, CP-51-CR-0001796-2014,
CP-51-CR-0001797-2014, CP-51-CR-0001799-2014,
CP-51-CR-0001800-2014, CP-51-CR-0001801-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TERRY JOHNSON | : | |
| | : | |
| Appellant | : | No. 850 EDA 2019 |

Appeal from the Judgment of Sentence Entered September 5, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001794-2014,
CP-51-CR-0001795-2014, CP-51-CR-0001796-2014,
CP-51-CR-0001797-2014, CP-51-CR-0001799-2014,
CP-51-CR-0001800-2014, CP-51-CR-0001801-2014

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
      :  PENNSYLVANIA
      :
    v.    :
      :
      :
      :
TERRY JOHNSON    :
      :
    Appellant    :  No. 851 EDA 2019

Appeal from the Judgment of Sentence Entered September 5, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001794-2014,
CP-51-CR-0001795-2014, CP-51-CR-0001796-2014,
CP-51-CR-0001797-2014, CP-51-CR-0001799-2014,
CP-51-CR-0001800-2014, CP-51-CR-0001801-2014

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
      :  PENNSYLVANIA
      :
    v.    :
      :
      :
      :
TERRY JOHNSON    :
      :
    Appellant    :  No. 852 EDA 2019

Appeal from the Judgment of Sentence Entered September 5, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001794-2014,
CP-51-CR-0001795-2014, CP-51-CR-0001796-2014,
CP-51-CR-0001797-2014, CP-51-CR-0001799-2014,
CP-51-CR-0001800-2014, CP-51-CR-0001801-2014

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
      :  PENNSYLVANIA
      :
    v.    :

J-S52039-19

TERRY JOHNSON                          :
                                       :
        Appellant                      :     No. 853 EDA 2019

Appeal from the Judgment of Sentence Entered September 5, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001794-2014,
CP-51-CR-0001795-2014, CP-51-CR-0001796-2014,
CP-51-CR-0001797-2014, CP-51-CR-0001799-2014,
CP-51-CR-0001800-2014, CP-51-CR-0001801-2014

COMMONWEALTH OF PENNSYLVANIA    :     IN THE SUPERIOR COURT OF
                                :              PENNSYLVANIA
                                :
        v.                      :
                                :
                                :
                                :
TERRY JOHNSON                   :
                                :
        Appellant              :     No. 854 EDA 2019

Appeal from the Judgment of Sentence Entered September 5, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001794-2014,
CP-51-CR-0001795-2014, CP-51-CR-0001796-2014,
CP-51-CR-0001797-2014, CP-51-CR-0001799-2014,
CP-51-CR-0001800-2014, CP-51-CR-0001801-2014

BEFORE:  OTT, J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED SEPTEMBER 22, 2020**

Terry Johnson appeals the judgment of sentence entered following his convictions for seven counts of Assault of Law Enforcement Officer, eight counts of Recklessly Endangering Another Person, and one count each of Aggravated Assault, Persons Not to Possess, Use, Manufacture, Control, Sell

- 3 -

or Transfer Firearms, and Possessing Instruments of Crime.[1] We affirm on the basis of the trial court opinion.

The trial court aptly summarized the facts of this case, and we adopt and incorporate its summary herein. **See** Trial Ct Op., filed 12/11/18, at 1-7. At the close of trial, the trial court found Johnson guilty of the aforementioned offenses and sentenced him to an aggregate term of 20 to 40 years' incarceration. Johnson filed a post sentence motion, which the trial court denied.

This timely appeal followed. Johnson filed seven notices of appeal listing all seven docket numbers on each notice. We placed this case on "hold" pending resolution of our *en banc* consideration of whether his doing so violated **Commonwealth v Walker**, 185 A.3d 969, 971 (Pa. 2018) (directing prospectively that "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case"). We have since determined such actions are consistent with **Walker**, and we therefore address the merits of this appeal. **See Commonwealth v. Johnson**, -- A.3d --, 2020 WL 3869723 (Pa.Super. 2020) (*en banc*).

Johnson raises the following claims before this Court:

> I.  Is not the evidence insufficient as a matter of law to sustain more than two convictions for assault of law enforcement officer where the evidence failed to prove that [Johnson] fired more than two shots in the general direction of the police, and no other evidence demonstrated a specific intent to injure more than two

---

[1] 18 Pa.C.S.A. §§ 2702.1(a), 2705, 2702, 6105(a)(1), and 907, respectively.

- 4 -

of the many officers positioned outside his home such that he could not have had the requisite *mens rea* for more than two individuals?

II.     Did the trial court misinterpret 42 Pa.C.S.[A]. § 9719.1 to require a mandatory minimum sentence, whereas properly interpreted, this statute does not require any mandatory minimum sentence at all, but requires a mandatory maximum sentence (of not less than 20 years)?

Johnson's Br. at 4 (answer of the trial court omitted).

Johnson's first claim is a challenge to the sufficiency of the evidence. He maintains that "where the evidence proves that Johnson fired two shots into a crowd of seven officers, without more, the evidence is therefore sufficient to prove that he intended bodily injury to two different officers only, not seven." *Id.* at 18.

Our standard of review for a sufficiency claim is *de novo*. **See Commonwealth v. Rushing**, 99 A.3d 416, 420 (Pa. 2014). We must determine whether, viewing the evidence in the light most favorable to the Commonwealth and making all reasonable inferences in its favor, the evidence was sufficient to establish every element of each offense. *Id.* at 420-21.

The trial court characterized Johnson's claim – that Johnson "only fired two shots at the police and thus, could only be convicted of two counts of the crime of the assault upon a law enforcement officer" – as "manifest[ing] a myopic view of the evidence." Trial Ct. Op. at 10. The court explained that the prosecution presented "a plethora of evidence" that Johnson fired many more than two shots at police.

> [That evidence consisted of the testimony of several officers indicating that they heard projectiles ricocheting off of metal in close proximity to them and their observations of [Johnson] firing shots in their direction. It also consisted of evidence that at least two cars were damage by [Johnson's] gunfire and a window across the street from [Johnson's] residence was broken.

*Id.* at 10. It also noted that Johnson admitted firing a gun outside but claimed that he did not know that he was firing at police officers. *Id.* at 11. Our review of the certified record confirms the trial court's assessment that there was evidence that Johnson fired numerous shots, and affirm on the basis of its opinion. *See id.* at 7-11.

Next, Johnson alleges that the trial court "misinterpreted Section 9719.1 to require a mandatory minimum sentence[.]" Johnson's Br. at 27. He argues that the trial court erroneously determined that the mandatory minimum sentence for assault on a law enforcement officer was 20 years. *See id.* Rather, according to Johnson, the statute "only requires a mandatory maximum sentence of anywhere between 20 and 40 years." *See id.*

Johnson's claim raises a challenge to the legality of his sentence. Our standard of review of such a claim is *de novo*, and our scope of review is plenary. *See Commonwealth v. Delvalle*, 74 A.3d 1081, 1087 (Pa.Super. 2013) ("a challenge to the application of a mandatory minimum sentence is a non-waiveable challenge to the legality of the sentence").

The trial court also rejected this claim. *See* Trial Ct. Op. at 12. The court looked to the language of the statute, which provides that "[a] person convicted of the following offense shall be sentenced to a mandatory term of

imprisonment as follows: 18 Pa.C.S. § 2702.1(a) (relating to assault of law enforcement officer)--not less than 20 years." 42 Pa.C.S.A. § 9719.1(a). The trial court concluded that the language was unambiguous, and after reviewing case law, it determined that the provision requires a mandatory minimum sentence of 20 years for assault of a law enforcement officer, and that Johnson's sentences were not illegal. Trial Ct. Op. at 12-13 (citing **Commonwealth v. O'Brien**, 514 A.2d 618, 620 (Pa.Super. 1986) (concluding "[t]he words 'not less than' used in [Section 9718] unambiguously connote a minimum term of imprisonment"), and **Commonwealth v. Reid**, 117 A.3d 777, 780, 785 (Pa.Super. 2015)).

The trial court's reasoning on this point is consistent with case law and supported by the certified record. Trial Ct. Op. at 11-13. We thus affirm the trial court's rejection of Johnson's sentencing claim on the basis of the trial court's opinion, and affirm the judgment of sentence. **See id.** at 1-13.

Judgment of sentence affirmed.

Judge Ott did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2020

- 7 -

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION-CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA

v.

TERRY JOHNSON

: PHILADELPHIA COURT
: OF COMMON PLEAS
: CRIMINAL TRIAL DIVISION
:
: CP-51-CR-0001794-2014
: CP-51-CR-0001795-2014
: CP-51-CR-0001796-2014
: CP-51-CR-0001797-2014
: CP-51-CR-0001799-2014
: CP-51-CR-0001800-2014
: CP-51-CR-0001801-2014
:

CP-51-CR-0001794-2014 Comm. v. Johnson, Terry
Opinion

OPINION

8200801591

**MINEHART, J**

Terry Johnson (hereinafter "Appellant") appeals from the judgment of sentence imposed by this Court on September 5, 2018. For the reasons set forth below, it is suggested that the judgment of sentence be affirmed.

## PROCEDURAL HISTORY

On December 15, 2014, following a waiver trial before this Court, Appellant was found guilty of aggravated assault, graded as a felony of the first degree, possession of a firearm by a prohibited person, possessing instruments of crime, generally, and recklessly endangering another person as of CP-51-CR-0001794-2014, and assault of a law enforcement officer, graded as a felony of the first degree, and recklessly endangering another person as of CP-51-CR-0001795-2014, CP-51-CR-0001796-2014, CP-51-CR-0001797-2014 [1], CP-51-CR-0001799-2014, CP-51-CR-0001800-2014, and CP-51-CR-0001800-2014. On September 5, 2018, after

---

[1] Appellant was found guilty of two counts each of assault of a law enforcement office and recklessly and endangering another person as of CP-51-CR-0001797-2014.

1

this Court denied appellant's Motion for Extraordinary Relief, this Court then imposed sentences of ten to twenty years' incarceration on the aggravated assault conviction as of CP-51-CR-0001794-2014, and twenty to forty years' incarceration on the assault on a law enforcement officer convictions.[2] All sentences were directed to run concurrently with one another. Verdicts without further penalty were entered on the remaining charges. After he was sentenced, appellant filed a notice of appeal and a court ordered Pa.R.A.P. 1925(b) statement.

## FACTUAL HISTORY

In October of 2013, Mr. Drake Matteucci resided in a basement apartment located inside a Southwest Philadelphia residence situated at 2610 Daggett Street. Appellant and his family resided in the upper floors of the residence. During the early morning hours of October 6th, Matteucci was awakened by the sound of gunfire and went upstairs to the living room of the residence to investigate. Appellant then came down the stairs from the structure's upper floors with a gun in his hand, which he was waving around. Appellant, who was visibly agitated and seemed panicked, said that, "We have a situation.", and told Matteucci, who asked him what was going on, that he had to go. Appellant continued to wave his arms toward Matteucci and as he did so, the gun fired and the bullet struck Matteucci in his leg. Matteucci wrapped his leg in a blanket and appellant went back upstairs.

Matteucci called 911 and then made his way to the residence's back door at which time a police officer grabbed him and had him duck down behind a car. Matteucci told police that appellant and his family resided in the house after which he was taken by ambulance to a nearby hospital. When Matteucci exited the house, he observed police cars and numerous police officers taking cover behind parked cars.

---

[2] The sentences imposed on the assault on a law enforcement officer convictions were imposed in accordance with 18 Pa.C.S § 9719.1.

2

On October 6, 2013, at about 2:50 a.m., Philadelphia Police Officer Deshawn Long and his partner, Officer Corey Green, both of whom were in full police uniform, were on patrol in a marked police vehicle the area of 65th Street and Buist Avenue when they heard three gunshots. They traced the sound of the gunfire to the 2600 block of Daggett Street. The officers were directed to 2610 Daggett Street (appellant's residence) by a woman who lived on the block and when they proceeded to that location a person Officer Long believed to be a woman opened a curtain or blind on a basement window but quickly shut it after the officers announced themselves as police officers. When the officers heard additional gun shots coming, they believed, from inside the residence, Officer Long retrieved the officers' police vehicle, a Chevrolet Tahoe, which had its emergency flashers on, and drove it up to a residence just past appellant's residence so it could be used as cover. At about this time, a radio call went out concerning the shots the officers heard.

While positioned behind their police vehicle, Officer Long saw a male he later identified as appellant on an upper floor of his residence pacing back and forth in front of a window behind a sheer curtain while using the spot light on his vehicle. He also heard two or three additional gunshots come from inside appellant's house and a gun shot that went by his ear that sounded like it had ricocheted off of a vehicle parked very near his police vehicle. After other officers arrived, Officer Long heard additional shots striking metal directly behind him and his partner, Officer Green.

At some point Officer Long spoke with Matteucci who related that he had been shot by his friend as his friend was waving around a gun after his friend said there was a "situation." Officer Long did not hear additional gun shots after he spoke to Matteucci.

Philadelphia Police Officer Dwayne Cooksey and his partner were directed to go to the

3

2600 block of Daggett Street following the report of gunfire on that block. Upon arrival. Officer Cooksey saw several other police officers and Officers Long's and Green's vehicle stopped in the middle of the street. Officer Cooksey was advised by other officers that when officers tried to make contact with whoever was inside the residence, they heard gunshots inside the house. Then, as those officers walked away from Officer Cooksey, a male began firing at him and the other officers from a second floor window. The shots struck the house directly behind Officer Cooksey. Although he took cover, Officer Cooksey saw the shooter, who was thereafter identified as appellant, walking back and forth in front of the three second floor windows. Appellant fired shots out of those windows each time he walked by one of them after which he would withdraw from the window. When members of the Philadelphia's Swat Team arrived, Officer Cooksey who had been taking cover behind cars parked on the block, was ushered safely off the block.

Philadelphia Police Sergeant Philip Sprague, Jr., was the assigned street supervisor the night of the incident herein. As a result thereof, he went to the 2600 block of Daggett Street and spoke to officers Long and Green who advised him about what was occurring. Sergeant Sprague and two other officers went to 2010 Daggett and as they were knocking on the front door, the detective heard three gunshots inside the residence which prompted him and the other officers to retreat from the residence.

Detective Sprague took cover behind Officer's Long's Tahoe and while there, he saw a woman stick her head out of a second floor window., look in both directions, and then go back into the residence. The detective then heard three gunshots inside the residence which prompted him to declare a "barricade situation." Following this, while the detective was speaking to his lieutenant, Officer Long warned him to duck and pushed him down. The detective then heard

4

what he believed to be a bullet striking metal behind him. While at the scene, the detective heard police officers announce that they were police more than ten times. He also was informed that Matteucci had exited the residence along with the woman, who was later identified as Crystal Johnson, appellant's wife, he saw stick her head outside of the window. She had three children with her.

Philadelphia Police Officer Owen Schaffer and his partner also responded to the 2600 block of Daggett Street during the night of the incident. He and his partner secured the rear of 2010 Daggett Street and while doing so Officer Shaffer heard numerous gun shots that came in scattered bursts. He and his partner took cover behind some parked cars and from that position, Officer Shaffer saw a black male, who was later identified as appellant, stick his head out of a second floor window and look up and down the driveway that ran behind the houses situated there. He was on police radio and heard officers speaking over the radio that the gunshots Officer Shaffer heard had been fired from the front of the residence. The officer also saw children looking outside of a window and he asked them to come downstairs and exit the rear of the house. Matteutucci then exited the residence followed by a woman and three children.

When Matteucci and the woman exited the residence Sergeant Michael Davis, who also went to the scene and observed numerous police officers taking cover, spoke to the woman after she, Matteucci, and the children were moved to a safe location. She related that "Terry" was the only person still inside the residence. Sergeant Davis also spoke to Matteucci and he said that that "Terry" shot him but that he did not know why because he and Terry were friends. After Matteucci left the premises, the sergeant heard additional gun shots after Matteucci exited the house.

Sergeant Davis went to the front of the property after appellant had been removed from

5

the property. He observed that two cars parked in front of the property and a window across the street from it had been struck and damaged by gun shots. Police officers had taken refuge behind one of the two vehicles when the shots were being fired out of the house.

An examination of Daggett Street and appellant's residence conducted after the incident ended resulted in the discovery of numerous bullet strike marks outside the residence in various locations, projectiles and bullet strike marks in numerous locations inside the residence, and a fired cartridge case on the roof of the front porch of the residence. In the basement, police collected a copper bullet fragment and in a bedroom they recovered a live .45 caliber round, a .45 caliber semiautomatic handgun with an empty magazine, and two fired cartridge cases. Finally, police observed what was believed to be powdered cocaine on a vanity in a bedroom and recovered a fired projectile from the residence situated across the street from appellant's residence at 2607 Daggett Street.

The parties stipulated that after a camera on a motorized robot the SWAT team deployed inside appellant's residence relayed that appellant was unconscious and laying in a second floor front bedroom near a hand gun, SWAT members entered the residence and took appellant into custody. Appellant was taken to a hospital for treatment for a possible drug overdose. It was also stipulated that the .45 caliber weapon found inside the residence near where appellant was apprehended was operable and that the two fired cartridge cases collected from the front bedroom, the fired cartridge case found on the roof of the porch, and one found in appellant's pants pocket each were fired in the above referenced .45 caliber hand gun. Finally, the parties stipulated that two bullets, one found inside appellant's residence and one found inside of 2607 Daggett Street, a residence located across the street from appellant's residence, were fired from the .45 caliber handgun.

6

Appellant testified in his own defense. He indicated that the incident resulted from his over ingestion of cocaine, crystal methamphetamine, and Percocet. At about 2:30 a.m., he began hearing stuff outside his front door and seeing flashes, which prompted him to send his wife into the room where his children were sleeping. As a result of a prior incident that occurred in 2011, during which he was shot four times in a home invasion he thought that something similar was again occurring. He panicked when he looked out of his window and saw people moving around so he called some people, including his brother, and told him that he believed that he was under attack. His brother, who owned the house, told him where he could find a gun and upon retrieving it, he locked himself in a bedroom and began firing it inside the residence because he thought people were there. He then fired it outside at the persons he saw moving around. He denied knowing that the persons outside his residence were police officers and indicated that had he known that, he never would have fired shots at them.

Crystal Johnson confirmed that appellant had not been himself since he was shot in 2011 and that he was addicted to drugs. According to her, appellant began acting paranoid the night of the incident and accused her of cheating on him. In response she went into a bedroom and fell asleep but was awakened by the sound of gunfire.

## DISCUSSION

In his 1925(b) statement, Appellant first asserts the following:

> Was the evidence insufficient as a matter of law to sustain more than two convictions for assault of law enforcement officer, because the Commonwealth's evidence failed to prove beyond a reasonable doubt that Appellant fired more than two shots in the general direction of the officers, and thus could not have had a specific intent to injure each of the seven officers – *i.e.*, that because no evidence demonstrates Appellant's specific intent to injure any individual officer as opposed to the officers generally, a concurrent intent theory of liability cannot justify a finding of seven counts of assault of

7

law enforcement officers unless the evidence proves beyond a reasonable doubt that Appellant fired at least seven shots towards all seven officers?

Appellant's Pa.R.A.P. 1925(b) Statement, Issue a,

The Pennsylvania Supreme Court has provided the following standard of review for sufficiency of the evidence claims:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction... does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict... [A]ll of the evidence and any inferences drawn therefrom must be viewed in the light most favorable to the Commonwealth as the verdict winner.

Commonwealth v. Ratsamy, 934 A.2d 1233, 1235-1236 (Pa. 2007) (emphasis in original).

The Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. Commonwealth v. Duncan, 932 A.2d 226, 231 (Pa. Super. 2007) (citation omitted). A reviewing court may not substitute its judgment for that of the fact finder, and where the record contains support for the convictions, they may not be disturbed. Id. Lastly, the finder of fact is free to believe some, all, or none of the evidence presented. Commonwealth v. Hartle, 894 A.2d 800, 804 (Pa. Super. 2006).

In Commonwealth v. Bailey, 292 A.2d 345, 346 (Pa. 1972) the Supreme Court of Pennsylvania discussed the standard by which the validity of a conviction is to be judged:

> To sustain a conviction, the facts and circumstances which the Commonwealth prove must be established beyond a reasonable doubt. Although the Commonwealth does not have to establish guilt to a mathematical certainty, and may in the proper case rely wholly on circumstantial evidence, the conviction. must be based on more than mere suspicion or conjunction.

The crime of assault upon a law enforcement officer is defined as follows:

8

(a) Assault of a law enforcement officer in the first degree.--A person commits a felony of the first degree who attempts to cause or intentionally or knowingly causes bodily injury to a law enforcement officer, while in the performance of duty and with knowledge that the victim is a law enforcement officer, by discharging a firearm.

(b) Penalties.--Notwithstanding section 1103(1) (relating to sentence of imprisonment for felony), a person convicted under subsection (a) shall be sentenced to a term of imprisonment fixed by the court at not more than 40 years.

(c) Definitions.--As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

"Law enforcement officer." The term shall have the same meaning as the term "peace officer" is given under section 501 (relating to definitions).

"Firearm." As defined under 42 Pa.C.S. § 9712(e) (relating to

sentences for offenses committed with firearms).

18 Pa.C.S. § 2702.1. "Bodily Injury" is defined as "Impairment of physical condition or

substantial pain." 18 Pa.C.S. § 2301. "Firearm" is defined in 42 Pa.C.S. § 9712 (constitutionally

preempted) as "[a]ny weapon, including a starter gun, which will or is designed to or may readily

be converted to expel a projectile by the action of an explosive or the expansion of gas therein."

In Commonwealth v. Landis, 48 A.3d 432 (Pa. Super. 2012) (en banc), the Superior

Court held that in order to prove this crime the Commonwealth must establish the following

elements:

> (1) the defendant attempted to cause, or intentionally or knowingly caused, bodily injury, (2) the victim was a law enforcement officer acting in the performance of his duty; (3) the defendant had knowledge the victim was a law enforcement officer, and (4) in attempting to cause, or intentionally or knowingly causing such bodily injury, the defendant discharged a firearm.

Landis, 48 A.3d at 445.

9

Instantly, because none of the police victims were injured, the Commonwealth was obliged to prove that appellant discharged a firearm to attempt to cause bodily injury to the seven police officers named in the bills of information as victims of appellant's criminal actions. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a); Commonwealth v. Hall, 830 A.2d at 541. The intent to cause bodily injury or serious bodily injury may be shown by direct or circumstantial evidence, Commonwealth v. Hall, 830 A.2d at 542, and therefore, "may be inferred from acts or conduct or from the attendant circumstances." Landis, 48 A.3d at 446.

The application of these standards to the evidence presented by the Commonwealth leads ineluctably to the conclusion that there is no merit to Appellant's first claim. First, the premise of the issue, that appellant only fired two shots at the police and thus, could only be convicted of two counts of the crime of assault upon a law enforcement officer, manifests a myopic reading of the evidence. Although the Commonwealth was able to present definitive proof that two projectiles were fired at the police based on their discovery and collection of ballistic evidence, it presented a plethora of evidence proving beyond a reasonable doubt that appellant fired numerous shots at the officers who responded to the radio call about the incident herein. That evidence consisted of the testimony of several officers indicating that they heard projectiles ricocheting off of metal in close proximity to them and their observations of appellant firing shots in their direction. It also consisted of evidence that at least two cars were damaged by appellant's gunfire and a window across the street from appellant's residence was broken.

In addition, the Commonwealth presented evidence proving that appellant had knowledge that the victims were police officers. That evidence included the fact that most, if not

10

all of the officers were in uniform, several officers announced themselves to be police officers, and the emergency lights on the police vehicles were on during the incident.

Finally, appellant himself conceded that he fired shots at the officers albeit that he did know that the persons at whom he shot were police officers. Although he indicated that he would not have done so had he known that they were police officers, this Court found that testimony incredible given the number of officers who responded to the scene, the numerous times the police announced their identity, and the fact that several police cars had their emergency lights on during the incident. Accordingly, it is respectfully suggested that the evidence was sufficient to sustain all seven convictions for assault upon a law enforcement officer and that appellant be denied relief with respect to this claim.

In his final two claims, appellant challenges the legality of the twenty to forty year sentences imposed on the assault upon a law enforcement officer convictions as follows:

> b. Did the trial court impose an illegal sentence by improperly interpreting 42 Pa.C.S. § 9719.1 to require a "mandatory term of imprisonment" of "not less than 20 years" be applied to the minimum term of incarceration as opposed to the maximum term of incarceration and a proper statutory construction leads to the conclusion that the mandatory term of imprisonment must be applied to the maximum sentence in such a situation, *i.e.*, that the maximum sentence imposed may not be less than 20 years?

> c. Did the trial court impose an illegal sentence by improperly interpreting 42 Pa.C.S. § 9719.1 to require a "mandatory term of imprisonment" of "not less than 20 years" be applied to the minimum term of incarceration whereas the Pennsylvania Supreme Court in Commonwealth v. Glover, 156 A.2d 114 (Pa. 1959) held that the meaning of a statute providing for a mandatory term of imprisonment of "not less than" a term of years must be applied to the maximum sentence, and subsequent Superior Court cases interpreting other similar mandatory provisions are either distinguishable, or if not, should be overruled?

11

Under 42 Pa.C.S. § 9719.1(a), a person convicted of assault of a law enforcement officer pursuant to 18 Pa.C.S. § 2702.1(a), "shall be sentenced to a mandatory term of imprisonment" of "not less than 20 years." In the above issues, appellant asserts that the statute is ambiguous regarding whether the required twenty year sentence refers to the maximum imposable sentence or the minimum imposable sentence, as this Court determined; and that the holding of the Pennsylvania Supreme Court in Glover, supra, supports his interpretation of section 9719.1(a) that it refers to the minimum imposable sentence and not the maximum one. Appellant is mistaken.

The law in Pennsylvania is clear that penal statutes are to be strictly construed. 1 Pa.C.S. § 1928(b)(1). Where there are ambiguities in a penal statute's wording the law mandates that any ambiguity be resolved in favor of lenity, i.e., in favor of the accused. Commonwealth v. Booth, 766 A.2d 843, 846 (Pa. 2001) (internal citations omitted). Here the statute is not ambiguous because it is well settled that the phrase "not less than" refers to the minimum imposable sentence not the maximum sentence. Commonwealth v. O'Brien, 514 A.2d 618 (Pa. Super. 1986); Commonwealth v. Maderia, 982 A.2d 81 (Pa. Super. 2009).

In Commonwealth v. O'Brien, 514 A.2d 618 (Pa. Super. 1986), the Superior Court addressed a similar claim that raised by appellant herein and held that the words "not less than" "unambiguously connote a minimum term of imprisonment." O'Brien, 514 A.2d at 620. It added that, "[I]t strains all notions of common sense to suggest that 'not less than' can reasonably be interpreted as meaning 'maximum.' " Id.

Although O'Brien concerned mandatory minimum sentences imposed pursuant to 42 Pa.C.S. § 9718, which thereafter was deemed unconstitutional pursuant to Alleyne v. United

States, 570 U.S. 99 (2013), the section of those statutes found to violate the holding of Alleyne is not found in section 42 Pa.C.S. § 9719.1(a). See Commonwealth v. Reid, 117 A.3d 777, 785 (Pa. Super. 2015) ("Section 9719.1 does not require proof of any additional elements beyond those already required to convict a defendant of assault of a law enforcement officer in the first degree under 18 Pa.C.S. § 2702.1(a)."). Clearly, based on the foregoing, the "not less than" language from Section 9718 in O'Brien applies to the "not less than" language of Section 9719.1 and mandates a twenty-year mandatory minimum sentence for a conviction for assault of a law enforcement officer. ·

Appellant's claim that the Glover, supra, case supports his position is incorrect. In O'Brien, supra, the Superior Court rejected a claim that Glover applied to 42 Pa.C.S. § 9718 and that the sentencing provision referred to the maximum imposable sentence, not the minimum imposable sentence. O'Brien, 514 A.2d at 620. Accordingly, based on O'Brien, it is respectfully suggested that Appellant's third issue be deemed lacking in merit.

## CONCLUSION

Based on the foregoing, it is respectfully suggested that the judgment of sentence entered in this matter against appellant be affirmed.

BY THE COURT,

Date: 12/11/18

Honorable Jeffrey P. Minehart.

13

## CERTIFICATION OF SERVICE

I, Stacy Bauer, secretary to the Honorable Jeffrey P. Minehart hereby certifies that on the ___12th___ day of ___December___, 2018, by first class mail, postage prepaid, a true and correct copy of the attached opinion was served upon the following:

Aaron Marcus, Esquire
Assistant Defender
Defender Association of Philadelphia
1441 Sansom Street
Philadelphia, Pa. 19102

Lawrence J. Goode, Esquire
Chief-Appeals Unit
Office of the Philadelphia
District Attorney
Three South Penn Square
Philadelphia, PA 19107

_Stacy Bauer_
Stacy Bauer

14